# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SARAH C. YARNEY, <br><br> *Plaintiff,* <br><br> v. <br><br> OCWEN LOAN SERVICING, LLC, ET AL., <br><br> *Defendants.* | No. 3:12–cv–00014 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

The Plaintiff Sarah C. Yarney ("Plaintiff"), pursuant to Fed. R. Civ. P. 56, seeks summary judgment as to liability on all claims asserted in her complaint. Plaintiff alleges that Defendants Wells Fargo Bank N.A., as Trustee for SABR 2008-1 Trust ("Wells Fargo"), and its loan servicer, Ocwen Loan Servicing, LCC ("Ocwen"), attempted to collect on her home mortgage loan after she had settled the debt with Wells Fargo. Plaintiff brings three claims for relief in her March 2012 complaint: two under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and one under state law for breach of contract. A hearing on Plaintiff's motion for partial summary judgment took place on February 25, 2013, in Charlottesville, VA. For the following reasons, I grant Plaintiff's motion for partial summary judgment.

### I. BACKGROUND

This case stems from a settlement agreement between Plaintiff and Wells Fargo, which was finalized on March 18, 2011. The agreement resolved a 2009 suit Plaintiff had brought

1

against Wells Fargo, Statewide Mortgage, Equifirst Corporation, and Shaffer Title & Escrow, which had been removed to federal court under the case name *Yarney v. Wells Fargo Bank, N.A. et al.*, 3:09-cv-00050. Around September 2010, Plaintiff received notice that Ocwen had become the new servicer of her Wells Fargo mortgage loan, which had been in default since 2008. Under the terms of the March 18, 2011 settlement agreement, Wells Fargo agreed to accept Plaintiff's deed in lieu of foreclosure, and Plaintiff agreed to dismiss her suit against Wells Fargo with prejudice. Also, Wells Fargo's servicer (Ocwen) was required to instruct the deletion of all trade lines associated with Plaintiff's account—in other words, remove all credit reporting relating to Plaintiff's mortgage loan—as of March 2009, the date Plaintiff's lawsuit was filed in state court.

Plaintiff executed a deed in lieu of foreclosure on the day of the settlement, and mailed it to counsel for Wells Fargo.[1] Plaintiff also stipulated to dismissal of her suit against Wells Fargo with prejudice. However, despite the fact that Plaintiff no longer owned the deed or owed any debt to Wells Fargo, Ocwen continued to send Plaintiff monthly bills.[2] Each of the bills listed figures under the headings "Current Amount Due" ($1604), "Past Due Amounts DUE IMMEDIATELY" (between $43,312 and $59,353), and "Total Amount Due", which reached $105,796.03 by the February 2012 statement. *See* Docket No. 23-13 (Pl.'s Ex. 11). Ocwen also sent Plaintiff a Notice of Intent to Force Place Insurance in September 2011, and then a bill dated October 29, 2011 for the cost of the forced placement of insurance for the 718 West Street property in Charlottesville, though Plaintiff no longer owned the property or resided there.[3]

---

[1] Counsel eventually recorded the deed in lieu of foreclosure in Charlottesville Circuit Court on August 22, 2011.

[2] Plaintiff submitted to the court bills she received from Ocwen for the following months: April 2011, June 2011, July 2011, August 2011, September 2011, October 2011, November 2011, December 2011, January 2012, and February 2012.

[3] Plaintiff lived at 718 West Street, Charlottesville, until approximately April 2010. The mailings were sent to her new address, also located in Charlottesville.

Despite these bills and notices, Wells Fargo admits that Ocwen received notice of the March 18, 2011 agreement as early as April 4, 2011. On May 6, 2011, Plaintiff also advised Ocwen representatives by phone that she no longer owned the 718 West Street property. On August 19, 2011, August 21, 2011, and October 6, 2011, Plaintiff's counsel notified Wells Fargo's counsel that Ocwen continued to send Plaintiff bills and notices, and requested that the situation be corrected. In an August 2011 email exchange with Plaintiff's counsel, Wells Fargo's counsel replied that, with regard to Ocwen's continued attempt to collect from Plaintiff, "We have once again reminded Ocwen to cease its billing of Mrs. Yarney." Docket No. 23-11 (Pl.'s Ex. 9).

Plaintiff's counsel also contacted Ocwen. In an October 20, 2011 letter, counsel informed Ocwen that Plaintiff had representation, and provided Ocwen with a copy of the March 18, 2011 settlement agreement. Docket No. 23-23 (Pl.'s Ex. 21). Further, Ocwen's transaction log for November 5, 2011, confirms that it received a voicemail from Plaintiff's attorney, again stating that Ocwen was not to send any more collection letters or call plaintiff directly. Plaintiff's attorney also demanded that Ocwen send a letter to counsel's office stating that Ocwen would no longer contact the borrower by mail or phone. *See* Docket No. 23-22 at 2 (Pl.'s Ex. 20) (Ocwen transaction log, 11/5/2011 notes).

Still, Plaintiff states that she received numerous phone calls in December 2011 from individuals identifying themselves as Ocwen representatives, sometimes multiple times per day. Ocwen's transaction logs describe one conversation, from December 30, 2011, during which Plaintiff informed Ocwen about the settlement agreement. *See* Docket No. 23-14 (Pl.'s Ex. 12) (Ocwen transaction log, 12/30/11 notes) ("Bwr stated she had worked out a settlement agreement year 2011 with Wells Fargo Bank and was upset as she was getting calls from Ocwen about the

pmt . . . ."). Plaintiff contacted Ocwen again on January 3, 2012, and reiterated that there was a settlement agreement in place, and that she should no longer be receiving payment notices. Plaintiff recalls a conversation that took place on January 26, 2012, during which an Ocwen representative refused to speak to her attorney, despite Plaintiff's efforts to give him her attorney's name and contact information.

Despite these communications between Plaintiff, her counsel, and Defendants, Plaintiff continued to receive bills directly from Ocwen until February 11, 2012, when Ocwen informed her that they were researching her loan, and would respond within 20 days. Then, on March 8, 2012, Ocwen sent Plaintiff another notice stating that they were continuing to research her loan. In the meantime, however, Ocwen sent payoff quotes to Plaintiff's counsel. On February 12, 2012, Ocwen emailed Plaintiff's counsel stating that she still owed a total of $297,472.82 on her mortgage loan. On March 5, 2012, Ocwen emailed Plaintiff's counsel with another payoff quote, this time totaling $297,605.45. On March 14, 2012, Ocwen emailed Plaintiff's counsel a third payoff quote, totaling $299,068.34. Plaintiff states that she never requested any payoff quote, but as detailed above, through various communications, only informed Ocwen of the settlement agreement and that she did not owe any money. As a result of Ocwen's actions, Plaintiff contends that she is entitled to judgment as a matter of law on her FDCPA claims.

Along with these continued billings and communications, despite the terms of the March 18, 2011 settlement agreement, Ocwen also reported Plaintiff's account to credit bureaus as delinquent. Plaintiff's file with Ocwen contains an April 6, 2011 note that a request was submitted "to have entire trade [line] deleted per below settlement terms." However, on April 12, 2011, Ocwen reported Plaintiff's account to credit bureaus with an unpaid balance of $191,5721, and $73,270 past due. *See* Docket No. 23-19 (Pl.'s Ex. 17) (Ocwen transaction log,

4/12/11 notes). In fact, Ocwen continued to report Plaintiff's account to credit bureaus as delinquent until April 2012. *See* Docket No. 23-20 (Pl.'s Ex. 18). Plaintiff contends that Defendants' actions constituted a breach of the terms of the March 18, 2011 agreement, and that she is entitled to judgment as a matter of law on her state law claim.

## II. LEGAL STANDARD

Summary judgment under Rule 56 should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50.

In considering a motion for summary judgment, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The party seeking summary judgment bears the burden of showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325. If the moving party sufficiently supports its motion for summary judgment, the burden shifts to the non-moving party to set forth specific facts illustrating genuine issues for trial. *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008) (citation omitted). On those issues for which the non-moving party has the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in the rule. Fed. R. Civ. P. 56(c); *Mitchell v. Data Gen. Corp.,* 12 F.3d 1310,

5

1315–16 (4th Cir. 1993). *See also Cheatle v. U.S.*, 589 F. Supp. 2d 694, 698 (W.D. Va. 2008) ("Indeed, the non-moving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation.") (citation omitted).

The court's role is to determine whether there is a genuine issue based upon the facts, and "not . . . weigh the evidence and determine the truth of the matter." *Anderson,* 477 U.S. at 249. Ultimately, the trial court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

### III.  DISCUSSION

### A.  Plaintiff's FDCPA Claims as a Matter of Law

The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage. *U.S. v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996) (citing 15 U.S.C. § 1692e). To establish a violation of the FDCPA, three requirements must be satisfied: (1) the plaintiff who has been the target of collection activity must be a "consumer", as defined in § 1692a(3); (2) the defendant collecting the debt must be a "debt collector", as defined in § 1692a(6); and (3) the defendant must have engaged in any act or omission in violation of the FDCPA. *Withers v. Everland*, 988 F. Supp. 942, 945 (E.D. Va. 1997).

In evaluating alleged violations of the Act, the Fourth Circuit has embraced "the least sophisticated consumer" standard, whose basic purpose is "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136. The standard for the least sophisticated consumer "'is low, close to the bottom of the sophistication meter.'" *Morgan v. Credit Adjustment Bd., Inc.*, 999 F. Supp. 803, 805 (E.D. Va. 1998) (quoting

1315–16 (4th Cir. 1993). *See also Cheatle v. U.S.*, 589 F. Supp. 2d 694, 698 (W.D. Va. 2008) ("Indeed, the non-moving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation.") (citation omitted).

The court's role is to determine whether there is a genuine issue based upon the facts, and "not . . . weigh the evidence and determine the truth of the matter." *Anderson,* 477 U.S. at 249. Ultimately, the trial court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

### III.  DISCUSSION

### A.  Plaintiff's FDCPA Claims as a Matter of Law

The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage. *U.S. v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996) (citing 15 U.S.C. § 1692e). To establish a violation of the FDCPA, three requirements must be satisfied: (1) the plaintiff who has been the target of collection activity must be a "consumer", as defined in § 1692a(3); (2) the defendant collecting the debt must be a "debt collector", as defined in § 1692a(6); and (3) the defendant must have engaged in any act or omission in violation of the FDCPA. *Withers v. Everland*, 988 F. Supp. 942, 945 (E.D. Va. 1997).

In evaluating alleged violations of the Act, the Fourth Circuit has embraced "the least sophisticated consumer" standard, whose basic purpose is "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136. The standard for the least sophisticated consumer "'is low, close to the bottom of the sophistication meter.'" *Morgan v. Credit Adjustment Bd., Inc.*, 999 F. Supp. 803, 805 (E.D. Va. 1998) (quoting

1315–16 (4th Cir. 1993). *See also Cheatle v. U.S.*, 589 F. Supp. 2d 694, 698 (W.D. Va. 2008) ("Indeed, the non-moving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation.") (citation omitted).

The court's role is to determine whether there is a genuine issue based upon the facts, and "not . . . weigh the evidence and determine the truth of the matter." *Anderson,* 477 U.S. at 249. Ultimately, the trial court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

### III.  DISCUSSION

### A.  Plaintiff's FDCPA Claims as a Matter of Law

The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage. *U.S. v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996) (citing 15 U.S.C. § 1692e). To establish a violation of the FDCPA, three requirements must be satisfied: (1) the plaintiff who has been the target of collection activity must be a "consumer", as defined in § 1692a(3); (2) the defendant collecting the debt must be a "debt collector", as defined in § 1692a(6); and (3) the defendant must have engaged in any act or omission in violation of the FDCPA. *Withers v. Everland*, 988 F. Supp. 942, 945 (E.D. Va. 1997).

In evaluating alleged violations of the Act, the Fourth Circuit has embraced "the least sophisticated consumer" standard, whose basic purpose is "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136. The standard for the least sophisticated consumer "'is low, close to the bottom of the sophistication meter.'" *Morgan v. Credit Adjustment Bd., Inc.*, 999 F. Supp. 803, 805 (E.D. Va. 1998) (quoting

*Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir. 1996)); *see also Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994) ("Stated another way, [the least sophisticated consumer] is the single most unsophisticated consumer who exists.").

First, in this case, Plaintiff is a consumer under the FDCPA, which defines the term as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). A debt is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1692a(5). An obligation to make mortgage payments, as well as fees, penalties, and interest on that mortgage, constitutes a "debt" under the FDCPA. *See Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006).

Second, Ocwen, the loan servicer in this case, is a debt collector under the meaning of the FDCPA. Under the statute, "[f]or an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired." *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012). "The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred." *Id.* (citations omitted). Accordingly, while there is no statutory definition for loan servicer under the FDCPA, "a loan servicer will become a debt collector under 1692a(6)(F)(iii) if the debt was in default or treated as such when it was acquired." *Id.* at 360 n.4. *See also Castrillo v. American Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d 516, 524 (E.D. La. 2009) ("If AMHSI took the mortgage for servicing before Castrillo was in default, it is not a debt collector subject to the

FDCPA. If it took the mortgage after Castrillo's default, it would be a debt collector.") (internal citations omitted). In summary, mortgage servicers are considered debt collectors under the FDCPA if they became servicers after the debt they service fell into default. At the time Ocwen became the servicer on Plaintiff's home loan, the loan was already in default. Therefore, Ocwen is a debt collector seeking to collect an alleged debt for the purposes of FDCPA liability in this case.[4]

1. Defendants' Liability under 15 U.S.C. § 1692e(2)(A)

The FDCPA prohibits debt collectors from using false, misleading, or deceptive representations in connection with the collection of a debt, including a false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The FDCPA is a strict liability statute requiring evidence of "the capacity of the statement to mislead; evidence of actual deception is unnecessary." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 139. Thus, knowledge of a statement's falsity is not a necessary element to establish deception. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) ("The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute."); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) ("Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages.").

One type of misrepresentation prohibited by § 1692e(2)(A) is the false representation that a debt exists. *See Ross v. RJM Acquisitions Funding, LLC*, 480 F.3d 493, 495 (7th Cir. 2007) (holding that a debt collector who demands payment from a debtor whose debts are discharged in

---

[4] Ocwen makes this point clear in its various written communications to Plaintiff. *See, e.g.*, Docket No. 2-2 (Pl.'s Ex. G-I) ("This is communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose."); Docket No. 23-25 (Pl.'s Ex. 23) ("Ocwen Loan Servicing, LLC is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.").

bankruptcy makes a false claim and violates the statute); *Vitullo v. Mancini*, 684 F. Supp. 2d 747, 758 (E.D. Va. 2010) (finding debt collector's attempt to collect from a non-debtor spouse constituted a false statement actionable under the FDCPA). *See also McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 949-50 (9th Cir. 2011) (holding a debt collector violated FDCPA by seeking attorney's fees to which it was not entitled). Accordingly, as Plaintiff notes, attempting to collect on debts that have been settled may be a violation of the FDCPA. *See, e.g.*, *Fetters v. Paragon Way, Inc.*, 2010 WL 5174989, at *3-*4 (M.D. Pa. Dec. 15, 2010)) ("[W]hen a debt collector asserts that there is an obligation to be paid, whether true or not, the protections of the FDCPA are triggered.") (citations omitted). Plaintiff contends that Defendants' undisputed conduct in this case, which include clear attempts to collect on a debt after it had been settled, gives rise to liability under the FDCPA.

On the other hand, Defendants argue that actions following the March 2011 settlement agreement are not protected under the FDCPA. In support, Defendants cite *Gorbaty v. Portfolio Recovery Assoc., LLC*, 355 F. App'x 580, 2009 WL 4642371 (3d Cir. 2009), which held that certain post-debt conduct was not covered by the FDCPA. *See id.* at *2 ("When a debt is cancelled, there is no debt and there can be no debt collection."). However, the facts of *Gorbaty* are vastly different from the case at hand, and the holding is not applicable either. In *Gorbaty*, the plaintiff received two "Cancellation of Debt" notices on an IRS 1099-C form from the defendant, Portfolio Recovery Associates, LLC. The notices contained a description of the cancelled debt, the date the debt was cancelled, the amount, and a description of potential penalties from the IRS if the cancelled debt was not accurately reported as taxable income. The plaintiff sent a letter to Portfolio requesting verification of the alleged debt, and when he didn't

receive a response, he filed suit. The plaintiff claimed that in sending the 1099-C forms and failing to verify their contents, Portfolio violated the FDCPA. *Id.* at *1.

Significantly, the court in *Gorbaty* noted that "there is no allegation that Portfolio was seeking the payment of any money in connection with the cancelled debt, *or ever made any attempt to collect a debt from Gorbaty.*" *Id.* at *2 (citation omitted) (emphasis added). Furthermore, the court continued, "[n]or has Gorbaty offered any facts to support his allegations that Portfolio used false, unconscionable, or deceptive forms in the collection of a debt." *Id.* Because the Portfolio's action of sending the 1099–C forms was not "in connection" with a debt collection proceeding, the court affirmed that plaintiff had failed to state a cognizable claim. *Id.* Conversely, Plaintiff's case here is based on the undisputed fact that she continued to receive statements and bills from Ocwen falsely stating that she owed Defendants a debt, as well as phone calls from its representatives indicating the same.

Defendants also cite *Posso v. ASTA Funding, Inc.*, 2007 WL 3374400 (N.D. Ill. Nov. 9, 2007), in support of its claim that the FDCPA does not apply to the alleged "post-debt" activities in this case. As in *Gorbaty*, the plaintiff in *Posso* based her § 1692e claim on an IRS 1099-C form she received from the defendant, after her debt had been settled. *Id.* The plaintiff argued that "because the Tax Form allegedly had information relating to her debt, it constitutes conduct in connection with the collection of her debt." *Id.* at *4 (internal quotations and citation omitted). However, as in *Gorbaty*, the court simply noted that the defendant was not taking any collection action at all. *Id.* at *3 ("In this case, [plaintiff's] own complaint makes it abundantly

clear that there was no debt collection proceeding . . . .").[5] Given the clear collection attempts that occurred in the present matter, *Gorbaty* and *Posso* are not applicable.

The district court in *Fetters*, 2010 WL 5174989, explains this distinction in further detail. There the plaintiff alleged that the defendant corporation continued its attempt to collect on an alleged debt after a settlement agreement had been reached. Unlike in *Gorbaty,* the plaintiff's claim in *Fetters* was not based on a communication he received informing him that the debt had been cancelled. Rather, as in the present case, the plaintiff in *Fetters* alleged that the defendants continued to communicate (incorrectly) that his debt was open, and continued to take coercive action to collect on the alleged amount. *Fetters*, 2010 WL 5174989, * at 3. The court explained:

> The Court agrees that the situation where a debt has been paid and nothing further is sought from the consumer is one in which the FDCPA does not apply. Yet that is not the situation alleged by Plaintiff. To the contrary, Plaintiff alleges that Defendants continued to act in a false, deceptive, misleading and unfair manner by threatening to take action that it could not legally take or did not intend to take for the purpose of coercing Plaintiff to pay the alleged debt.

*Id.* (internal quotations omitted). The *Fetters* court proceeded to distinguish *Posso* on these grounds as well, *see id.* at *4, and denied defendants' motion for judgment as a matter of law.[6]

In the present case, after signing a settlement agreement, executing a deed in lieu of foreclosure, and dismissing her suit against Wells Fargo, Plaintiff continued to receive monthly statements from Ocwen, the loan servicer. Ocwen repeatedly alleged that Plaintiff was obligated

---

[5] The *Posso* court added, "[I]t is evident from the plain language and the purpose of the FDCPA that Congress did not intend post-debt collection actions that are in no way related to an attempt to recover a debt . . . to be covered under Section 1692e." 2007 WL 3374400, at *3.

[6] Defendants also cite *Miller v. Bank of America*, 858 F. Supp. 2d 1118, 1122 (S.D. Cal. 2012), for the same premise discussed in *Posso*, which the court cites. *See Miller*, 858 F.2d at 1122 ("[C]onduct by a former debt collector— even if otherwise prohibited—is not actionable under the [FDCPA] because the activities must occur 'in connection' with a present debt collection proceeding.") (citations omitted). In *Miller*, the disputed activities were alleged false statements regarding the status of plaintiff's request to correct inaccuracies in his credit score report. *Id.* at 1123. In the present case, the disputed activities are Ocwen's oral and written efforts to collect an alleged debt. Thus, *Miller* can be distinguished for the same reasons discussed above.

to make payments on her mortgage loan, and sent Plaintiff monthly bills indicating a "current amount due" by the beginning of the following month, a "Past Due Amounts DUE IMMEDIATELY", and a "Total Amount Due". Ocwen sent Plaintiff notice that her escrow account would be charged for an insurance policy premium, and later sent her counsel unsolicited payoff quotes. Plaintiff also received repeated phone calls from Ocwen's representatives seeking to collect payments from her—all despite notice of the March 2011 settlement, both by counsel that represented Wells Fargo in the settlement process and by Plaintiff and her attorneys. Because Ocwen consistently and repeatedly attempted to collect on an alleged debt, its conduct is covered under the FDCPA.

In doing so, Ocwen falsely represented the character and legal status of Plaintiff's debt, which had been absolved under the terms of the settlement agreement. With apparent regard to the materiality of those representations, Defendants contend that Plaintiff cannot show that she was deceived or misled by Ocwen's conduct, because she knew that her debt had been settled, had capable counsel, and never attempted to pay the alleged debt or return money she received in the previous settlement agreement.[7] However, it is well established that "a plaintiff asserting a claim under § 1692e need not prove actual reliance on a false representation." *Neild v. Wolpoff & Abramson, LLP*, 453 F. Supp. 2d 918, 923 (E.D. Va. 2006) (citation omitted). The Fourth Circuit has embraced "the least sophisticated consumer standard . . . to ensure that the FDCPA

---

[7] In support, Defendants noted during the February 25, 2013 hearing that while the least sophisticated debtor standard seeks to protect naïve consumers, it also "prevents liability for bizarre or idiosyncratic interpretations of the collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136 (citation omitted). The Eastern District cited this language in *Vitullo* and *Morgan*, whose holdings are entirely consistent with the application of an objective inquiry. For example, in *Vitullo*, the court found a FDCPA violation where a debt collector attempted to collect from a non-debtor spouse. 684 F. Supp. 2d at 758. The court noted: "It does not matter that [plaintiff] knew he was not a signatory to the note and thus was not liable for the debt. Instead, what matters is that the letter falsely states that he is liable on the note and [plaintiff] could plausibly believe that a debt collector considers that he . . . is liable on the note and is seeking to collect the debt." *Id.* The "quotient of reasonableness" language that Defendants cited is instead illustrated by the notion that "communications must be examined as whole, not sentence-by-sentence, because the least sophisticated consumer standard does not go so far as to provide solace to the willfully blind or non-observant." *Id.* at 756 (citation and internal quotation omitted).

protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136 (citation omitted). Again, the least sophisticated consumer standard is an objective one, and the standard is "low, close to the bottom of the sophistication meter." *Morgan*, 999 F. Supp. at 805 (internal quotation marks and citation omitted). Given the contents of the monthly bills and notices sent to Plaintiff directly, along with the continued calls she received from collection agents, I find that the least sophisticated consumer in Plaintiff's position could believe that she still owed a debt. Thus, Plaintiff is entitled to summary judgment on her count that Ocwen violated § 1692e(2)(A) of the FDCPA.

2. Defendants' Liability under 15 U.S.C. § 1692c(a)(2)

In regards to her second claim under the FDCPA, Plaintiff contends that "Ocwen communicated with [her] in connection with the collection of the alleged debt, although it knew that she was represented by an attorney and knew the attorney's name and address, in violation of 15 U.S.C. § 1692c(a)(2)." The FDCPA prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address," unless the attorney fails to respond within a reasonable period of time or unless the consumer or her attorney consents to the debt collector directly contacting the consumer. *See* 15 U.S.C. § 1692c(a). Plaintiff notes that an informal notification of representation is sufficient for the purposes of the statute. *See, e.g., Pearce v. Rapid Check Collection, Inc.*, 738 F. Supp. 334, 337-38 (D.S.D. 1990) (holding that a phone call was sufficient to notify debt collector that debtor had counsel); *Goins v. JBC & Assoc.*, 352 F. Supp. 2d 262, 272-73 (D. Conn. 2005) (holding debt collector violated 1692c(a)(2) by contacting

debtor directly after debtor had previously sued debt collector over debt at issue, and thus debt collector knew that debtor was represented by counsel).

In this case, Ocwen's transaction log from November 5, 2011, indicates that it received a voicemail from Plaintiff's counsel stating that Ocwen was not to send Plaintiff collection letters or call her due to the settlement agreement, and requesting a letter confirming that Ocwen would no longer contact Plaintiff, to be sent to Plaintiff's counsel.[8] Defendants also produced during discovery a letter dated October 20, 2011, from Plaintiff's counsel, as well as a copy of the settlement agreement and counsel's contact information. Because Plaintiff continued to directly receive bills, statements and phone calls from Ocwen representatives seeking to collect on an alleged debt obligation, despite notice that she was represented by counsel, Plaintiff is entitled to summary judgment that Ocwen violated section 1692c(a)(2).

### B. Plaintiff's Breach of Contract Claim as a Matter of Law

To establish a breach of contract claim under Virginia law, a plaintiff must prove: "(1) a legally enforceable obligation of [the] defendant to [the] plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George,* 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004) (citations omitted). Plaintiff contends that Wells Fargo breached its agreement with Plaintiff, through the action of its agent, Ocwen, by failing to accept her deed in lieu of foreclosure or failing to absolve her of any deficiency on her mortgage loan. Plaintiff states that the March 18, 2011 settlement agreement she signed constituted a valid and enforceable agreement between Plaintiff and Wells Fargo. The agreement states, in pertinent part:

---

[8] Plaintiff's counsel had previously communicated with Wells Fargo's counsel, notifying Wells Fargo that Plaintiff continued to receive bills from Ocwen despite the settlement agreement. *See* Docket No. 23-11 (Pl.'s Ex. 9) (Counsel emails, Aug. 2011).

2. Deed in Lieu. The holders of Yarney's mortgage security instrument will accept a deed in lieu of foreclosure, absolving Yarney from any deficiency related to her mortgage loan transaction. Such holders are to bear all expenses related to the transaction.

3. Trade Line Deletion. The current servicer, Ocwen Loan Servicing, will instruct all trade lines associated with Yarney's mortgage loan be deleted, effective as of the date the Lawsuit was filed in state court.

4. Dismissal. Within five business days after the parties have executed this Settlement Agreement, the Deed in Lieu of Foreclosure and the funds have been tendered to counsel for Yarney, Yarney will file an agreed order of dismissal with the electronic signature for counsel for all parties, that dismisses with prejudice all claims against Defendants. That dismissal will be filed by March 18, 2011.

Docket No. 23-9 at 1 (Pl.'s Ex. 7).

Plaintiff complied with these terms by executing a deed in lieu of foreclosure for the 718 West Street property, which Wells Fargo recorded in Charlottesville Circuit Court, and dismissing her claims against Wells Fargo.[9] On the other hand, as Plaintiff contends, Wells Fargo failed to comply with its obligations, due to the actions of Ocwen, its servicer.

By attempting to collect payments from Plaintiff on behalf of Wells Fargo, Ocwen acted as Wells Fargo's agent with respect to the original mortgage loan.[10] Further, the undisputed facts in this case demonstrate that Ocwen continued to behave in all respects towards Plaintiff as Wells Fargo's agent after the March 18, 2011 settlement agreement.[11] While a party may

---

[9] Virginia applies the plain meaning rule, which requires that courts read contract language that is unambiguous and capable of only one reasonable construction according to its plain meaning. *See Davis v. Davis*, 239 Va. 657, 662, 391 S.E.2d 255, 257 (1990).

[10] *See generally R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 187 (1st Cir. 2006) ("Typically, a mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan."); 12 U.S.C. § 2605(i)(3) (definition of "servicing" under the Real Estate Settlement Procedures Act). Plaintiff also notes Wells Fargo's interrogatory response in which it invoked privilege so as not to disclose prior communications between Wells Fargo's counsel and Ocwen, which was not a party to the previous suit. *See* Docket No. 23-3 at 7 (Pl.'s Ex. 1).

[11] While Defendants argued during the February 25, 2013 motion hearing that Wells Fargo shouldn't be held liable for Ocwen's conduct from now until eternity, Ocwen's actions at the center of this case constituted collection efforts in connection with the same mortgage loan debt for which Ocwen had been assigned to service, and that Plaintiff and Wells Fargo had attempted to resolve under the March 18, 2011 settlement agreement. Thus, given the facts of

15

delegate the performance of its duties under a contract, it retains the ultimate obligation to perform. *Dominion Res. Servs., Inc. v. 5k Logistics, Inc.*, 2010 WL 917492, at *4 (E.D. Va. March 8, 2010). *See also Miller v. Quarles*, 242 Va. 343, 347-48, 410 S.E.2d 639, 642 (1991) (noting a principal is liable to the other contracting party for the failure of its agent to perform a contract). Due to Ocwen's subsequent attempts to collect mortgage loan payments from Plaintiff, Wells Fargo neither absolved Plaintiff of her possible deficiency nor properly accepted the deed in lieu of foreclosure.

Nor did Ocwen comply with the provision of the agreement requiring the deletion of all trade lines associated with Plaintiff's mortgage loan. While Ocwen's transaction logs indicate that personnel did take action to delete the trade lines in early April 2011, six days later Ocwen again reported Plaintiff's account as delinquent, and continued to do so regularly until April 2012.

In response, Defendants contend that the only legally enforceable obligation required of Ocwen was to request that credit reporting agencies delete the trade line associated with Plaintiff's mortgage loan, and thus any conduct by Ocwen after it requested that deletion falls outside the reach of the agreement. However, as Plaintiff notes, contracting parties owe each other a duty of good faith in the performance of an agreement, including "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Restatement (Second) of Contracts § 205, cmt. a (1981). The March 18, 2011 agreement was meant to "absolv[e] [Plaintiff] from any deficiency related to her mortgage loan transaction." And yet, along with continued billing and collection attempts, Defendants reported Plaintiff's mortgage as delinquent only a week after it had requested the deletion of trade lines associated

---

this case, Ocwen continued to act as Wells Fargo's agent with respect to Plaintiff following the settlement agreement.

with her account, and continued to do so for an entire year. To find that such conduct was permitted under this agreement would be "to embrace an interpretation of [the agreement] that would render irrelevant its material terms." *Cent. Tel. Co. of Va., Inc., v. Sprint Commc'ns Co. of Va.*, 759 F. Supp. 2d 789, 806 (E.D. Va. 2011). I refuse to do so, and thus, due to the actions of its servicer, Plaintiff is entitled to summary judgment that Wells Fargo breached the March 18, 2011 contract agreement.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is granted. This case is scheduled for a jury trial on April 9, 2013, at 9:30 a.m. in Charlottesville, VA, at which time Plaintiff will have the opportunity to testify in regards to any damages she may be entitled to in this matter.[12] An appropriate order accompanies this memorandum opinion.

The clerk of the court is hereby directed to send a certified copy of this memorandum opinion to all counsel of record.

Entered this __8th__ day of March, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[12] A debt collector who violates the FDCPA is liable for actual damages, additional damages of up to $1,000, and attorneys' fees and costs. *See* 15 U.S.C. § 1692k(a).